[Sac. No. 461.  Department One.—October 8, 1898.]

## MARY L. HUMPHREY, Appellant, v. LOUISA C. POPE, Respondent.

ACTION BY MARRIED WOMAN—ENTICING AWAY HUSBAND.—A married woman, whose husband has deserted her, may maintain an action in her own name for damages against another woman who has alienated her husband's affections, and enticed and abducted him from her, with intent to deprive her of his companionship, assistance, and support.

ID.—PARTIES—DESERTION BY HUSBAND—CONSTRUCTION OF CODE.—Section 370 of the Code of Civil Procedure, which authorizes a married woman to sue alone, without joining her husband as a party, "when she is living separate and apart from her husband, by reason of his desertion of her," is to be construed together with section 95 of the Civil Code, defining willful desertion; but it is not necessary that the desertion must have continued for the statutory period entitling the wife to a divorce, in order to enable her to sue in her own name.

ID.—"ABDUCTION" OF HUSBAND—PERSUASION AND ENTICEMENT.—Section 49 of the Civil Code, forbidding "the abduction of a husband from his wife," and "the abduction or enticement of a wife from a husband," is not to be construed as limiting the wife to an action where her husband has been forcibly taken from her, or as conferring a more favorable right of action upon the husband than upon the wife. The "abduction," in either case, may be accomplished by persuasion or enticement; and the section confers upon the wife a right of action against another woman for alienating her husband's affections and enticing him away from her.

ID.—DAMAGES—COMMUNITY PROPERTY.—The question whether the damages recovered by the wife would or would not be community property cannot affect the right of the wife to sue in her own name, when expressly given both a right of action and a remedy in her own name by the provisions of the code.

ID.—GIST OF ACTION—PLEADING—CERTAINTY.—The gist of the action by the wife is the enticing or taking away of her husband, and alienating his affections, and although a complaint alleging such gist ought also to state with some certainty during what period of time the enticements of the defendant were brought to bear upon the husband, yet the failure so to do, though specially demurred to, is not ground for dismissing the action, without leave to amend; but the plaintiff would be entitled, under such complaint, to prove that the conduct of the defendant began while her husband was living with her, prior to his alleged desertion of her, and that defendant enticed him away from the plaintiff.

APPEAL from a judgment of the Superior Court of San Joaquin County. Edward I. Jones, Judge.

The facts are stated in the opinion.

James A. Louttit, and Louttit & Middlecoff, for Appellant.

Gibson & Ramage, and J. G. Swinnerton, for Respondent.

CHIPMAN, C.—Action for damages. A demurrer to the amended complaint was sustained without leave to further amend, and judgment was given in favor of defendant, from which this appeal is prosecuted. The complaint alleged that at all the times mentioned in the complaint plaintiff and one W. G. Humphrey were husband and wife; on the —— day of September, 1896, the husband willfully deserted plaintiff, and by reason of said desertion plaintiff "is living separate and apart from him"; defendant, "willfully and wrongfully intending to injure plaintiff and to deprive her of the affection, support, comfort, fellowship, society, aid, and assistance of . . . . the said husband, wrongfully, . . . . at divers days and times before the commencement of this action, and while such marriage existed, alienated and destroyed the affection of the . . . . husband of this plaintiff . . . . and did illegally persuade, entice, and abduct said W. G. Humphrey from plaintiff, whereby plaintiff has wholly lost and been deprived of the assistance, comfort, fellowship, society, aid, and support of . . . . her said husband, to all of which plaintiff during all said time was entitled . . . . and otherwise would have had, but for the illegal persuasion, conversation, and the enticement, abduction, and doings and

actions of defendant, as hereinbefore recited." The demurrer was upon several grounds: 1. Plaintiff had not legal capacity to sue; 2. Insufficiency of facts to constitute a cause of action; 3. The complaint is ambiguous, unintelligible, and uncertain.

1. Respondent contends that plaintiff could not bring the action without making her husband a party plaintiff.

The amended complaint was filed June 7, 1897, and the alleged desertion occurred in September, 1896. The statutory period required to make the desertion cause of divorce had not elapsed. In *Andrews v. Runyon*, 65 Cal. 629, the wife sued in her own name alone for personal injuries. It was objected that she could not do so, but that the husband must be joined. It was held that section 370 of the Code of Civil Procedure authorized the suit, because when commenced she was living separate and apart from her husband by reason of his desertion of her. (*Baldwin v. Second Street Cable R. R. Co.*, 77 Cal. 390.)

Section 370 of the Code of Civil Procedure requires the husband to be joined when a married woman is a party, which is the common-law rule; but the section introduces certain exceptions, and among them: "3. When she is living separate and apart from her husband by reason of his desertion of her, or by agreement in writing entered into between them, she may sue or be sued alone." It was held under the provisions of the act of March 9, 1870 (Stats. 1869-70, p. 226), in *Tobin v. Galvin*, 49 Cal. 34, that the words "while living separate and apart from her husband" do not mean a temporary absence of the wife. There must have been an abandonment on the part of the husband or wife, or a separation which was intended to be final. The code adds to the language of the former act the words "by reason of his desertion of her." The desertion through which comes the separation and forms the exception we do not think must necessarily have continued for the statutory period entitling the wife to a divorce. But the desertion must be such as is given as a cause for divorce by section 95 of the Civil Code, towit, a voluntary separation with intent to desert. The two sections should be read together to ascertain the meaning of the word "desertion" in section 370 of the Code of Civil Procedure. Section 107 of the Civil Code fixes the time the desertion must continue; but what is willful desertion

is defined by section 95 of the Civil Code. It would be a harsh rule and an unwarranted construction of the statute to hold that a husband may willfully separate from his wife with intent to desert, and yet that she could not maintain an action for a personal injury to herself if it occurred at any time within one year after the husband's desertion and abandonment of her. We think the allegations of the complaint sufficient upon this point.

2. The more serious question is that raised by respondent for insufficiency of facts alleged. The argument is that personal rights are defined by section 43 of the Civil Code, and include the right to protection from injury to personal relations and that such injuries are carefully defined by section 49 of the Civil Code, and are entirely different from injuries to the person such as bodily restraint, bodily harm, defamation, which are enumerated in section 43 of the Civil Code.

Section 49 reads: "The rights of personal relation forbid: 1. The abduction of a husband from his wife, or of a parent from his child; 2. The abduction or enticement of a wife from her husband, of a child from a parent or from a guardian entitled to its custody, or of a servant from his master." Respondent claims that abduction means something different from enticement, and that this is recognized by section 49 because the word "enticement" is omitted from clause 1, but is included in clause 2.

The word "abduct" is from the Latin *ab-duco*, to lead away. Abduction is the taking away a wife, child, or ward, by fraud and persuasion, or open violence. (*Carpenter v. People*, 8 Barb. 606; *State v. George*, 93 N. C. 570.) In private or civil law it is the act of taking away a man's wife by violence or persuasion. (3 Stephen's Commentaries, 536.) In reason the wife should be as much entitled to sue for violation of her personal right, where her husband has been taken away from her by enticement, if such right exist at all, as should the husband when his wife has been enticed from him. Ordinarily, the injury is greater to the wife than to the husband. We are unwilling to give a construction to this section which would limit the wife to an action when her husband has been forcibly taken from her. Our criminal statute as to the crime of abduction for purposes of

prostitution uses the words "takes away" for the word "abduct," and it has been held "that a physical carrying away is not required to constitute the taking, but that inducements are sufficient." (*People v. Demousset*, 71 Cal. 611.) In the decisions of courts generally, the word "abduction" and the words "taking away" are used as the equivalent of each other, as we think they in fact are. We are unwilling to impute to the legislature any intention to give to the husband a right of action for the abduction of his wife under clause 2 of section 49 of the Civil Code, of which the wife is deprived by the phraseology of clause 1. The abduction meant in both clauses we think should be held to be the same. And this brings us to the question, Has the wife an action against another woman for enticing the husband away from and destroying his affection for her?

It was decided as early as the nineteenth year of George II, in *Winsmore v. Greenbank*, Willes, 577, and has been the law ever since, that the husband has an action for enticing away his wife —for taking away from him the comfort and society of his wife (*per quod consortium amisit*), and the action was invented to compensate the lonely and forsaken husband. But at common law the wife had no right of property in any damages recovered on her account for any cause, and was given no right of action to recover them. She was not only inferior to her husband, but she had no personal identity separate from him. As the wife was then regarded, the courts, with perfect consistency, in denying her this action simply added this to her many other disabilities. Obviously and grossly wrong, such, nevertheless, was the generally accepted theory of the common law. And yet it was not accepted without protest, for in *Lynch v. Knight*, 9 H. L. Cas. 577, Lord Chancellor Campbell said: "Nor can I allow that the loss of *consortium*, or conjugal society, can give a cause of action to the husband alone." I have been able to find but two cases in this country not overruled, and respondent cites no others, where this barbarous discrimination has been approved. (*Duffies v. Duffies*, 76 Wis. 374; 20 Am. St. Rep. 79; *Doe v. Roe*, 82 Me. 503; 17 Am. St. Rep. 499.) The first of these decisions was placed upon the ground that neither the common law nor the statutes of the state gave the wife the right to maintain such an action. The second denies the right apparently because: **1.**

Against good policy; and 2. Particularly because it is not allowed by statute. Opposed to this view, and giving to the wife a right of action without joining her husband on various grounds —in some states because the statutes have removed the disabilities from the wife, in others on the broad ground that the wife should have the action—we find a long array of decisions, the force and reasoning of which are entirely satisfactory to our minds. The courts of last resort have so held in Connecticut, New Hampshire, New York, Ohio, Michigan, Indiana, Illinois, Iowa, Missouri, Wisconsin, Kansas, Nebraska, and Tennessee. The cases are too numerous to be cited, and we content our-selves by referring to a few of them: *Bennett v. Bennett* (1889), 116 N. Y. 584, where it was said that the common law gave the right of action, but afforded no remedy, and that the remedy is now supplied by the code. *Westlake v. Westlake* (1878), 34 Ohio St. Rep. 621, 32 Am. Rep. 397, where the doctrine of the common law and the reason upon which it rests are clearly pointed out. *Warren v. Warren* (1891), 89 Mich. 123, where the leading case (*Duffies v. Duffies, supra*) against the right is controverted and many of the cases in support of the action are cited. *Foot v. Card* (1889), 58 Conn. 1, 18 Am. St. Rep. 258, where the points presented in the present case are fully met and where will be found a lucid statement of the modern opinion upon the subject, and where it is held that by the very nature of the action and "of legal necessity, therefore, damages for injury to this right must be to her solely," and this even though at the time the husband was living with his wife, the plaintiff. See, also, *Price v. Price* (1894), 91 Iowa, 693; 51 Am. St. Rep. 360; *Clow v. Chapman* (1894), 125 Mo. 101; 46 Am. St. Rep. 468, where it was said: "As the only reason why the wife formerly could not maintain an action for the alienation of her husband's affections was the barbarous common-law fiction that her legal existence became suspended during the marriage and merged into his, which long since ceased to obtain in this jurisdiction, there remains now not the semblance of reason, in principle, why such an action may not be maintained here." It remains to determine whether the law of this state is such as to constrain us to adopt the effete and inhuman doctrine of the common law, or whether we may not follow the more enlightened and humane principles so univer-

sally approved in our own country. The right to sue in her own name is expressly given to plaintiff by paragraph 3, section 370, of the Code of Civil Procedure. The only possible impediment to the right of action that may be suggested arises out of the question, Would not the damages recovered be property of the community, and, if so, would not that fact require the husband to be joined? She is given the right of action, as we have seen, by section 49 of the Civil Code; she is given the remedy in her own name by section 370 of the Code of Civil Procedure. Where the husband sues for the loss of his wife's affections, the fact that the damages might or night not be held to be community property would not affect his right of action; and we can see no reason why any different rule should apply where the wife brings the action. Conceding, but not deciding, that any damages the plaintiff may recover would be community property, we think the action properly brought in her name alone.

3. The objection to the complaint for ambiguity, et cetera, respondent says is based upon the ground that it cannot be ascertained therefrom whether the abduction was committed before or after the husband deserted the plaintiff. While we think it but fair to defendant to be informed with some certainty during what period of time the blandishments of the husband's seducer were brought to bear upon him, we cannot say that the action should be dismissed for failure to do so. The complaint does charge with definiteness that defendant, during the marriage and before the commencement of the action, did wrongfully destroy the husband's affection for plaintiff and did illegally persuade, entice, and abduct him from her, whereby she was wholly deprived of his assistance, comfort, fellowship, and society. This alleged conduct of defendant may have begun while the husband was still living with his wife, and plaintiff would have the right to so show. The gist of the action alleged is the enticing or taking away of plaintiff's husband and alienating his affections.

The judgment should be reversed, and the cause remanded with directions to overrule the demurrer.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, and the cause remanded, with directions to overrule the demurrer.        Harrison, J., Garoutte, J., Van Fleet, J.