[No. 329. Decided January 21, 1892.]

MARIE HAWKINS AND GEORGE HAWKINS, *Respondent,* v. FRONT STREET CABLE RAILWAY COMPANY, *Appellant.*

STREET RAILWAYS—INJURIES TO PASSENGERS—PARTIES—CONTRIBUTORY NEGLIGENCE—DAMAGES.

An action for injury to the wife, caused by the negligence of another, must be brought in the name of the husband, and the wife, while not a necessary is a proper party to such action; and there may be a recovery therein for the pain, suffering, wounded feelings, etc., of the wife, and, on the part of the husband, the cost of her nursing, medical attendance and medicines, together with the loss of her services in the household.

An instruction is erroneous which charges that " Where a passenger, being carried on a train, is injuried without fault of his own, there is legal presumption of negligence, casting upon the carrier the burden of disproving it." (SCOTT, J., dissents.)

A passenger, injured while occupying a seat upon the dummy-car of a cable railway, is not guilty of contributory negligence, as such seats are provided for passengers, and anyone sitting there has the same right to be protected against the negligence of the company's servants as passengers in the trail car.

In an action for injuries to a woman pregnant with child, there can be no recovery for the death of the child and its premature birth as a result of the injuries, but there may be a recovery for the woman's suffering and impaired health resulting from the death and premature birth of the child, if it is shown that such death is due to the negligent injury received by her.

*Appeal from Superior Court, King County.*

Action by Marie and George Hawkins, wife and husband, against the Front Street Cable Railway Company, to recover for personal injuries to the wife while a passenger on defendant's cars. Judgment for plaintiffs, and defendant appeals.

*J. C. Haines,* for appellant.
*Ralph Simon* and *Allen & Powell,* for respondents.

The opinion of the court was delivered by

Stiles, J.—This was an action by husband and wife for damages resulting from injuries inflicted upon the wife through the negligent acts of appellant's conductor and gripman while she was a passenger on its street car. She occupied an outside seat on the "dummy," at the side and near the front. At a certain place the railway track was blocked by a grocer's delivery wagon, the driver of which refused to move out of the way until the dummy came to a stop within a foot or two of the rear end of the wagon. After the gripman had called upon the wagon driver to move on, the conductor told the gripman to move the car up and hit or push the wagon. The gripman obeyed the directions and struck the wagon a light blow, when the driver of the wagon whipped up his horse and drove down the street, still occupying the railway track, the dummy following closely after, and perhaps still pushing the wagon. They proceeded thus for about three hundred feet when suddenly the driver turned his horse sharply to one side for the purpose of entering a cross street, and the dummy coming immediately behind crashed into the rear end of the wagon, and upset and broke it. Some portion of the wagon, said to be part of a broken wheel, fell upon Mrs. Hawkins, and injured her. The complaint contained allegations of damages as follows:

"Whereby and by reason of which said plaintiff's (Mrs. Hawkins') body was greatly bruised and injured, causing this plaintiff to suffer great pain of body and anguish of mind, and was by reason thereof confined to her bed under the care of a physician, and prevented from attending to her household duties as also her business and employment, to wit, that of bath tender, for a long space of time, to wit, ten days, and thus prevented from earning her salary of two dollars per day; and this plaintiff, the said George Hawkins, the husband of said Marie Hawkins, was deprived of the society, services, companionship and solace of his

said wife, and was compelled to and did incur large expense and outlay, both of time and money, in attending to and curing his said wife as aforesaid, whereby he was damaged in a large sum, to wit, one thousand dollars.

"That at the time, to wit, the 26th day of May, 1890, when the said defendant corporation, by its carelessness and neglect as aforesaid caused the injury aforesaid, the plaintiff Marie Hawkins was *enceinte*, and that the injury to her body as aforesaid, caused by the collision aforesaid, was of such a severe character that it caused the death of the child with which the said plaintiff was then and there *enceinte* as aforesaid, and since the filing of the second amended complaint and the answer thereto herein, to wit, on October 5th, 1890, the plaintiff Marie Hawkins lost the said child, and by reason whereof the said Marie Hawkins suffered great pain in body and distress of mind in giving birth to the said child dead, and in the loss of the said child; and these plaintiffs were compelled to and did expend large sums of money in curing the said Marie Hawkins, and suffered other damages therein."

The case was commenced within a few days after the injury occurred, and originally charged no damage accruing later than ten days from May 26th, but subsequent to October 5th the last paragraph was added as a supplemental complaint.

The first error complained of relates to the husband's alleged damage. The defendant requested the court to charge that the fact that the husband was joined as a plaintiff in the action gave him no right to recover any damages on his own account for loss or injury sustained by him. This request was refused, and the court charged instead:

"If the jury find for the plaintiffs, and if they find that by reason of the injuries of the wife, Marie Hawkins, the husband, George Hawkins, was deprived of the ordinary benefit of his wife's services, then the jury may, in computing the damages, take into consideration a fair compensation of such loss caused by the wife's injuries."

At common law, when a wife was injured through the tort of a third person, the injury and the right of action were hers, but she could not sue unless her husband, if living, joined her as plaintiff. The recovery in that case was the pecuniary measure of her own injury and suffering in body and mind. But there was another element of damage which could be recovered only by her husband suing alone in a separate action, viz., his loss of her services and his outlay in restoring her to health. In this case the complaint seems to have been based upon the idea that he could also recover for the society, companionship and solace of his wife, but we do not understand these to be recoverable injuries. As matter of fact, unless death ensues, the husband is not deprived of either, although his enjoyment of them may be lessened by the knowledge of his wife's suffering. They are of those sentimental, intangible injuries which the law cannot measure. Even in case of death they are not elements of damage. 2 Thompson on Negligence, 1289; *Commissioners of Howard Co. v. Legg*, 93 Ind. 523; 47 Am. Rep. 390. The departure from the common law has, in the most of the states, been in the direction of securing to the wife the right to sue alone for injuries to her, and giving her the fruits of her action as her separate property. In others, as Wisconsin (Rev. St. § 2680), husband and wife may recover in the same action for all the injuries to both, in case of a tort committed against her.

The instruction requested by the appellant was based upon the common law rule, and would have been a proper instruction were the common law in this particular in force here. But inasmuch as the right to sue for a tort which one has suffered is a chose in action, and therefore property, in those states where, as here, all property acquired by either spouse otherwise than by gift, bequest, devise or descent is common or community property, this chose in action is suable by that member of the community who

has the disposition of the community personalty. So in Texas, it is held that the wife is not either a necessary or a proper party to an action for an assault committed upon her. *Ezell v. Dudson*, 60 Tex. 331; *Gallagher v. Bowie*, 66 Tex. 265 (17 S. W. Rep. 407). And in California the husband is held to be a necessary party since he has the management and power of disposition of the right to damages as part of the common property. *McFadden v. Santa Ana, etc., Ry. Co.*, 87 Cal. 464 (25 Pac. Rep. 681).

Our statutes are substantially the same in this respect as those of Texas and California, and we see no reason why we should not follow the decisions of those states. In this case, therefore, the husband was the only necessary party, though the wife, by § 7, Code of 1881, is a proper party, and in this action all of the damages naturally flowing from the injury complained of are recoverable. The first element of these to be considered is that directly connected with the person of the wife, the injury and its subsequent consequences, whether permanent or temporary, and her pain, suffering, wounded feelings, etc.; next the cost of her nursing, medical attendance and medicines which, although they could at common law be recovered by the husband alone, are with us presumptively expenses incurred and paid by the community; and lastly the loss of the wife's services in the household. Under this ruling it is apparent that the instruction asked by the defendant was properly refused, and that given by the court as above was substantially correct.

The second point made by appellant is that the court erred in instructing the jury thus:

"It is the law that where a passenger being carried on a train is injured without fault of his own, there is legal presumption of negligence, casting upon the carrier the burden of disproving it."

Such is not the law as laid down by very numerous au-

thorities.  The language of the charge in question was apparently taken from Cooley on torts (2d ed.), p. 796, where it is quoted with approval as being well said in a Pennsylvania case.  There follow several lines in the text, however, which qualify the quotation and make it clearly the law when applied to the cases intended to be covered by it.  These additional lines are also taken from the Pennsylvania case, but without credit by quotation.  The case was *Meier v. Pennsylvania R. R. Co.*, 64 Pa. St. 225; 3 Am. Rep. 581, where the exact language is:

"*Prima facie*, where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence, casting upon the carrier the *onus* of disproving it.  This is the rule when the injury is caused by a defect in the road, cars or machinery, or by a want of diligence or care in those employed, or by any other thing which the company can and ought to control as a part of its duty, to carry the passenger safely; but this rule of evidence is not conclusive."

No case cited to us, or that we have been able to find, goes further than this.  See Patterson's Railway Accident Law, ch. 6, p. 438, *et seq.*  In *Federal Street, etc., Ry. Co. v. Gibson*, 96 Pa. St. 83, a passenger on the street car of a railway company was struck and injured by a passing load of hay.  The charge of the trial court was that, if plaintiff was without fault, he was entitled to recover, unless the defendant satisfied the jury by the weight of evidence that the injury arose from an accident which could not be prevented by the utmost skill, foresight and diligence on the part of the driver.  Held, error; and the court said:

" It is true, in many cases, that mere fact of injury to a passenger raises the presumption of want of care on the part of the railroad company.  Such is the case when the injury results from defective track, cars, machinery or motive power.  Here there was no privity between the com-

pany and the driver of the wagon.  .  .  .  We see nothing in the case which relieved the defendant in error from proving negligence, or that threw on the company the burden of disproving it."

Applying the just rule thus laid down to the case at bar, we do not see how the charge given by the court, even had it been modified as quoted fron *Meier v. Pennsylvania R. R. Co., supra,* could have been pertinent.  The nature of the accident was not such as to warrant saying anything about the machinery, and the question whether the servants of the appellant violated any duty to Mrs. Hawkins in allowing the dummy to run so close behind the wagon as to touch or push it, so that when the wagon was turned into the side street by the driver it was upset, was the very question which the jury was to decide upon the proofs.  They were to say whether, under all the circumstances, there was negligence in so running the car at the rate of speed at which it traveled, or in not stopping the car when the wagon slackened its pace in turning out. But if the fact of injury was to determine the negligence *prima facie,* the jury would naturally stop its consideration of the other questions and look to the defendant's evidence to see whether there was anything to negative the presumption declared by the court.  For this error the case must be reversed.  But there are some other matters which it is necessary to advert to in view of another trial.

The appellant claims contributory negligence on the part of Mrs. Hawkins in taking a seat on the outside of the dummy when she could have sat safely on the inside of the trail car.  This we cannot support.  The seats on the dummy were for passengers, and anyone sitting there had the same right to be protected against the negligence of the company's servants as though he had sat inside.

The original claim in this case was for special damage to a dress worn by Mrs. Hawkins, in the sum of $25, $20

for loss of her earnings as a bath tender, and $3,000 general damages. But by the third amended and supplemental complaint, filed after the delivery of her child, the demand was raised to $25,000. We can see no reason for this very great increase in the alleged damage, unless it was upon the theory that, if the death of the child could be shown to have been caused by the injury to its mother, that fact would be ground for an enhancement of the damage. Nor can we upon any other theory account for the vast amount of medical testimony adduced to show that the death of the child some three weeks before its delivery was attributable to the blows and fright inflicted upon Mrs. Hawkins four months and nine days before its delivery. Had this testimony been coupled with any attempt to show that in giving birth to the child the mother had suffered any unusual pain or illness, or that by the death of the child and her subsequent carriage of it for several weeks in that condition, she had been subjected to extraordinary distress of body or mind, we might discern some purpose in it. But it is admitted that the mere loss of the child by its death *en ventre sa mere* is not a recoverable damage, and for aught that appears, there was no perceptible difference in the amount of pain and illness attending the delivery of the child dead from what there would have been had it been alive. It may have been imagined that there would be, but there was no testimony that there was. It appeared that the child, on May 26th, must have been at least four months advanced. On that day the accident occurred, after which Mrs. Hawkins went home without assistance. She was immediately attended by a physician, who found symptoms of miscarriage. But after about ten days of quiet and treatment the danger apparently passed away, and she resumed her accustomed household duties, using great care and caution, however, against any imprudence which might bring on the dreaded

miscarriage.   She continued somewhat nervous and anx-
ious, and suffered some pain and had some faint spells; but
the child was alive, and remained so until a certain time
some four weeks before October 5th, after which no signs
of life were observed.   No physician was summoned until
the day of her delivery, and the confinement lasted some
fourteen hours.   It was about two months later before she
could resume her household duties.   Previous to the acci-
dent she was a healthy woman, and had none of the symp-
toms described.

Upon these summarized facts the jury was to find what
pecuniary injury the plaintiffs suffered from the tort com-
mitted against Mrs. Hawkins, not in any sense against the
child.   Cases are cited to show that damages have been
recovered for a miscarriage.   *Shartle v. Minneapolis*, 17
Minn. 308; *Barbee v. Reese*, 60 Miss. 906; *Brown v. Chicago,
etc., Ry. Co.*, 54 Wis. 342; 41 Am. Rep. 41.   But in all
such cases it will be found that the recovery was for the
ill-health and suffering attendant and consequent upon
the miscarriage, and not in any sense for the loss of the
child.   In this case, however, respondents' own medical
experts say there was no miscarriage, but a premature
birth caused by the death of the child from insufficient
nourishment, referable probably to the injury and fright
occurring to the mother in May previously.   Now time is
not considered in establishing liability for injuries, except
that when what are claimed to be effects of an injury ap-
pear at a period remote from the injury the proximateness
of the cause is more difficult to prove.   And so we have
no doubt that if Mrs. Hawkins shows impairment of health
and suffering growing out of the death and premature birth
of her child, which would not have attended its birth at
the usual time either alive or dead, and also that the child's
death is attributed to a negligent injury which she re-
ceived, respondents can recover for her suffering and

impaired health.    But she must show the injury by appropriate evidence, and the mere proof that the child died, and was prematurely delivered, as a result of the accident, would not be sufficient to presume substantial damage therefrom.

We are led to say this much from a belief that, from the way the case went to the jury, the death of the child probably occupied a large place in its calculations, and tended to cause the return of a somewhat excessive verdict, upon the showing of actual damage, though we do not wish it understood that if the size of the verdict were the only ground of objection, we should on that account reverse the case.    It is matter of common knowledge that every woman who is *enceinte*, and particularly one who is so for the first time, is more or less prone to nervousness and anxiety, as well as that the travail of childbirth is a time of suffering, illness and danger, so that it is not just to impose upon the merely careless tort feasor, without previous knowledge of her condition, liability for more of her trouble than he has actually caused.

Judgment reversed, and cause remanded for a new trial.

ANDERS, C. J., and DUNBAR, J., concur.

HOYT, J., did not sit at the hearing, being disqualified.


SCOTT, J. (*dissenting*).—I cannot agree with the conclusion reached by the majority in this case as to the ground upon which the judgment is reversed, that the right to a recovery was not limited to cases where the injury was due to some act or omission of the company's in the instruction which was given as to the presumption of negligence arising in the case of injury.   In this case the instruction could only have been injurious as bearing upon the fact that the injury might have been caused solely by the negligence of the driver of the express wagon in not getting out of the way, or in turning off so abruptly.    There was no question

as to the respondent having been hurt in this collision, and I think this general charge complained of was remedied, explained and limited in a subsequent instruction wherein the court charged the jury that:

"It is claimed in this case by the plaintiffs that the injuries received by Marie Hawkins were suffered from the consequences of a collision which took place between the cable car of the defendant and a wagon driven by one Keller, who is a witness in this cause. In order to enable the plaintiffs to recover it is not sufficient to show merely that the collision occurred and that the plaintiff Marie Hawkins was injured in consequence of it. In order to make the defendant liable for such injuries it must further appear by a preponderance of the evidence that the collision resulted from the negligence of the defendant or its employes. And I instruct you further that, if you should find from the evidence that the collision was caused by the negligence or carelessness of the man who was driving the wagon, and not by the negligence or carelessness of the defendant, then the person driving or owning the wagon would be liable for such injuries, and it would be your duty in such case to find for the defendant in this case."

Here the jury were specially told that the plaintiff could only recover in case the defendant was negligent, and that mere proof of the injury was not sufficient, and it seems to me that the jury could only have understood that the right to a recovery was so limited.

I do not understand that any question was raised over the testimony relating to the death of the child, except that its death was claimed to have been too remote to warrant any recovery of damages for anything resulting from it, nor do I understand that the judgment is reversed upon any such ground, so I do not desire to examine or comment upon the evidence in this respect. I think the judgment should have been affirmed.