[No. 5407–1.   Division One.   September 25, 1978.]

*In the Matter of the Marriage of* KATHRYN B.
KITTLESON, *Respondent, and* JAMES P.
KITTLESON, *Appellant.*

*Frederick C. Peterson,* for appellant.

*Lewis S. Armstrong,* for respondent.

CALLOW, J.—The marriage of James and Kathryn Kittleson was dissolved by decree on December 13, 1976. The husband appeals from that portion of the property division awarding the wife a percentage of the military disability payments he receives.

The husband enlisted in the United States Air Force in October 1942. He and his wife were married on January 9, 1944. He spent the next 24 years in the Air Force, either on active or reserve duty, and suffered a nonservice–connected back injury while on active duty in 1968. He was placed on a temporary disability retired list until 1971, when he was placed on a permanent disability retirement list pursuant to 10 U.S.C. § 1201. 10 U.S.C. § 1201 provides that the Secretary of the military branch concerned may retire a permanently disabled serviceman, with right to "retired pay," if (a) he has served at least 20 years, or (b) his disability rates at 30 percent or higher and he has served at least 8 years, as computed under 10 U.S.C. § 1208, or (c) his disability rates at 30 percent or higher and was incurred on active duty, or his disability was incurred in the line of duty during wartime. 10 U.S.C. § 1212. The husband qualified under category (b).

James Kittleson has received monthly disability payments since 1971. An actuary testified at trial that the present value of his retirement award was $202,411. The trial court found that 85 percent of his years of service accrued during his marriage to Kathryn Kittleson, and therefore found 85 percent, or $171,050, of the present value of the award to be community property. It awarded one–half of this sum to her, to be paid in monthly installments of $375.

In an action for divorce all property, both community and separate, is before the trial court for distribution. *Friedlander v. Friedlander,* 80 Wn.2d 293, 305, 494 P.2d 208 (1972); *Patrick v. Patrick,* 43 Wn.2d 139, 260 P.2d 878 (1953). The dissolution act of 1973[1] continues this rule. Rieke, *The Dissolution Act of 1973: From Status to Contract?,* 48 Wash. L. Rev. 375, 403 (1974).

It is the trial court's duty to characterize the property of the parties as community or separate, *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966), and to dispose of all of the property of the parties which is brought to its attention. *Shaffer v. Shaffer,* 43 Wn.2d 629, 262 P.2d 763 (1953); *Biehn v. Lyon,* 29 Wn.2d 750, 189 P.2d 482 (1948); *Beam v. Beam,* 18 Wn. App. 444, 569 P.2d 719 (1977); *DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). The characterization of property as community or separate is not necessarily controlling in the distribution of property under a divorce decree, *Patrick v. Patrick, supra; Folsom v. Folsom,* 106 Wash. 315, 179 P. 847 (1919), and the essential consideration is whether the final division of property is fair, just and equitable under all the circumstances. *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977); *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972). However, as stated in *Blood v. Blood, supra* at 682:

---

[1]RCW 26.09.080 provides:

"In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court *shall,* without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, *either community or separate,* as shall appear just and equitable after considering all relevant factors including, but not limited to:

"(1) *The nature and extent of the community property;*

"(2) *The nature and extent of the separate property;*

"(3) The duration of the marriage; and

"(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children." (Italics ours.)

The trial court in a divorce action is not bound to award all the separate property to the party acquiring it or to divide the community property equally; but in any disposition of the property of the parties, . . . the court must have in mind the correct character and status of the property as community or separate before any theory of division is ordered.

We must apply these enunciated principles to the issue of whether the military disability award received by the husband upon his discharge is to be classified as community or as separate property, and is to be subject to division in this dissolution proceeding.

■ Congress may determine the community or separate character of a federally created benefit. *Free v. Bland,* 369 U.S. 663, 668, 8 L. Ed. 2d 180, 82 S. Ct. 1089 (1962); *Wissner v. Wissner,* 338 U.S. 655, 660–61, 94 L. Ed. 424, 70 S. Ct. 398 (1950). However, the federal statutes providing for military disability pay do not suggest that Congress intended to determine whether the right of a married veteran, resident in a community property state, to disability pay was a community or separate asset. *See* 10 U.S.C. § 1201 *et seq.; In re Marriage of Jones,* 13 Cal. 3d 457, 531 P.2d 420, 119 Cal. Rptr. 108 (1975).[2] Therefore, at present, the states may resolve the problem of characterization and distribution under state law.

The nature of military disability pay under 10 U.S.C. § 1201 *et seq.* has been described as follows:

Disability pay, however, does not serve primarily as a form of deferred compensation for past services. Although longevity of service plays a role, the veteran's right to disability payments, and the amount of the payments, depend primarily on the existence and extent of the disability. Such payments serve to compensate the disabled veteran for the loss of military pay caused by his premature retirement and for his diminished ability to compete for civilian employment. (See Note (1973) 27 JAG J. 392, 400.) . . .

---

[2]*Disapproved on other grounds, In re Marriage of Brown,* 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633 (1976).

Disability payments serve a second purpose. We have suggested *supra* that they compensate the veteran for the pain, suffering, disfigurement and the misfortune caused by his disability.

*In re Marriage of Jones, supra* at 462. Military disability pay is received in monthly installments terminating at the death of the recipient, and eligibility is determined in part by longevity of service. These factors are characteristic of regular retirement pay, which is community property to the extent that the right to it accrued during marriage. *Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973).

A similarity also exists between disability pay and personal injury recovery. This similarity arises from the view of disability pay as compensation for loss rather than compensation for past services. The recovery of damages by either spouse for personal injury inflicted by a third party tort–feasor is treated as community property under Washington law. *Clark v. Beggs,* 138 Wash. 62, 244 P. 121 (1926); *Perez v. Perez,* 11 Wn. App. 429, 523 P.2d 455 (1974). A limitation of the rule to third party tort–feasors flows from *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972), which held that in interspousal tort suits one–half of the amount of general damages for loss of future earnings is recoverable by the injured spouse as his or her separate property, and general damages for pain and suffering are fully recoverable as that spouse's separate property. The *Freehe* opinion reiterated the rule in this state that recovery for injuries to a married person by a third party tort–feasor is community property.

The courts of Texas and California have previously considered the question of the characterization of disability pay as separate or community property. Both states characterize regular military retirement pay as community property. *Mora v. Mora,* 429 S.W.2d 660 (Tex. Civ. App. 1968); *In re Marriage of Fithian,* 10 Cal. 3d 592, 517 P.2d 449, 111 Cal. Rptr. 369, *cert. denied,* 419 U.S. 825 (1974). The state statutes overcast the consideration of the problem by the courts.

Texas Family Code § 5.01 provides:

(a) A spouse's separate property consists of:
(1) the property owned or claimed by the spouse before marriage;
(2) the property acquired by the spouse during marriage by gift, devise, or descent; and
(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

On the other hand, California Civil Code § 5126 provides:

(a) All money or other property received by a married person in satisfaction of a judgment for damages for personal injuries or pursuant to an agreement for the settlement or compromise of a claim for such damages is the separate property of the injured person if such money or other property is received as follows:
(1) After the rendition of a decree of legal separation or a final judgment of dissolution of a marriage.
(2) While either spouse, if he or she is the injured person, is living separate from the other spouse.
(3) After the rendition of an interlocutory decree of dissolution of a marriage.

The Texas rule is that all military disability payments, even those received after dissolution of the marriage, are community property. *Busby v. Busby,* 457 S.W.2d 551 (Tex. 1970); *Marshall v. Marshall,* 511 S.W.2d 72 (Tex. Civ. App. 1974); *Dominey v. Dominey,* 481 S.W.2d 473 (Tex. Civ. App. 1972), *cert. denied,* 409 U.S. 1028 (1972). The Texas rule makes an exception where a veteran receives a pension from the Veterans Administration for a service–connected disability. In such cases, all such payments, whether received during the marriage or after dissolution, are the separate property of the disabled spouse. *In re Marriage of Butler,* 543 S.W.2d 147 (Tex. Civ. App. 1976);[3] *Ramsey v. Ramsey,* 474 S.W.2d 939 (Tex. Civ. App. 1971). The basis for this distinction was that such payments were not the result of an earned property right accrued by reason of

---

[3]*Disapproved on a related matter, Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex. 1977). *Compare with Ramirez v. Ramirez,* 524 S.W.2d 767 (Tex. Civ. App. 1975, no writ).

years of military service, but were for personal injury or disease which was service–connected.

In California it was first held that a serviceman's right to disability pay, acquired before such serviceman had earned by longevity of service a vested right to retirement pay, was his separate property. *In re Marriage of Jones, supra.* The opinion states at page 462:

> So long as the marriage subsists, the veteran's reduced earnings works a loss to the community. But such community loss does not continue after dissolution; at that point the earnings or accumulations of each party are the separate property of such party. . . . Then any diminution in earning capacity becomes the separate loss of the disabled spouse.
>
> . . . Pain, suffering, disfigurement or the loss of a limb . . . is the peculiar anguish of the person who suffers it; it can never be wholly shared even by a loving spouse and surely not after the dissolution of a marriage by a departed one.

*In re Marriage of Cavnar,* 62 Cal. App. 3d 660, 133 Cal. Rptr. 267 (1976), held that where an employee's right to a regular pension was vested and he had been receiving regular monthly pension payments before changing to a disability retirement, such election would not defeat the community's interest in the regular retirement fund. It was held that the amount of each monthly payment received after dissolution which represented the regular retirement pay earned by longevity was community property, and the excess amount of each payment, which was attributable to the husband's disability, was his separate property. The court disclaimed any consideration of the situation where the right to regular retirement pay had vested but had not matured prior to the disability.

Finally, *In re Marriage of Mueller,* 70 Cal. App. 3d 66, 137 Cal. Rptr. 129 (1977), involved a serviceman who was involuntarily retired with a disability and began receiving disability payments. At the time of his involuntary retirement he had a vested right to a regular retirement pension which, because he had not previously elected to retire, had

not matured. The court held that the proportion of monthly payments which represented the amount which would have been due as a regular retirement right as of the date of involuntary retirement was community property, and the remainder, attributable to disability, was his separate property. The court stated:

> The rationale underlying the distinction between retirement benefits and disability benefits is that whereas retirement pay is deferred compensation for past services rendered and therefore community property, disability pay is compensation for personal anguish and diminished earning capacity, which, being comparable to damages for personal injuries received after separation or dissolution (see Civ. Code, § 5126), is the recipient spouse's separate property. . . .
>
> . . .
>
> We thus conclude that where the employee spouse elects to receive disability benefits in lieu of a matured right to retirement benefits, only the net amount thus received over and above what would have been received as retirement benefits constitutes compensation for personal anguish and loss of earning capacity and is, thus, the employee spouse's separate property. The amount received in lieu of matured retirement benefits remains community property subject to division on dissolution.

*In re Marriage of Mueller, supra* at 70–71.

█ We are guided by the directive of RCW 26.09.080, which requires the consideration of the nature and extent of the community and separate property and the just and equitable disposition of all property while considering the economic circumstances of each spouse at the time of the division of the property. We read the statute as a wise legislative recognition of the fact that the establishment of hard and fast rules in this area would only lead to inequities and untenable results as the myriad of possible situations came before the courts. The legislative policy as we perceive it was to provide flexible guidelines within which the courts could adjust and reconcile such considerations,

*inter alia,* as the health and age of the parties, their prospects for future earnings, their foreseeable future acquisitions and obligations, and whether the property to be divided should be attributed to the inheritance or efforts of one or the other, or both.

The disagreements exhibited in the majority and dissenting opinions in prior cases which have dealt with the division of property between the spouses often have reflected the weight that the philosophies of those adjudicating such cases at the appellate level have placed upon those considerations we have just recounted. We affirm the wisdom of the rule which reposes the disposition of all property within the discretion of the trial court, subject to being overturned only in the event of manifest abuse. *Lucker v. Lucker,* 71 Wn.2d 165, 426 P.2d 981 (1967); *Thompson v. Thompson,* 56 Wn.2d 683, 355 P.2d 1 (1960); *In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977); *In re Marriage of Monkowski,* 17 Wn. App. 816, 565 P.2d 1210 (1977).

The appellant husband urges that if the disability award is classified as separate property, it should not then be subject to distribution to the wife. This argument ignores the rule which makes separate property subject to distribution upon dissolution so long as the distribution is just and equitable. We note also that it is acknowledged that the husband had an election here between either taking his regular retirement benefit or taking the disability award, which he chose to do. Certainly, the husband could not by electing to take a disability award rather than a regular retirement eliminate the community interest in the award.

The appellant husband also submits that where retirement benefits have vested the community is entitled to that part of the benefit, but the additional amount awarded for disability should be the separate property of the pensioner.

The trial court characterized that portion of the disability award attributable to the husband's time in the service prior to the marriage as separate property, and that portion

attributable to his military service after marriage as community property. There was no differentiation made between that portion of the award that might be looked upon as compensation for loss of future earnings and that which might be characterized as compensating for personal pain, suffering or emotional distress.

Some disabilities are the result of long term exposure to injury, disease or impairment while employed during marriage, and some, as here, flow from injury, disease or impairment which did not result from employment but which will prevent the employee from engaging in the particular employment thereafter. An inflexible rule that required a disability pension to be classified as separate property would ignore the fact that some "disability" pensions step into the place of a regular retirement pension and permit an earlier retirement and/or retirement with increased payments, others contain elements in the award attributable to an earned regular retirement pension along with elements which compensate for physical injury, and yet other awards are made for disability alone. We hold that to require an unwinding of such awards in all cases would add a complexity to the trial court's task which is not warranted and which we find to be unwarranted in this case. Further, we hold that it would be unwise by our pronouncement of an absolute rule to preclude an award to the other spouse in the future from a "disability" pension when the extreme situation arises that would find one spouse able to look to a more than adequate disability pension while the other would be left destitute.

It cannot be said that the trial court abused its discretion when it characterized the actual nature of the disability pension attributable to the period the parties were married as community property. *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972); *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959); *Perez v. Perez,* 11 Wn. App. 429, 523 P.2d 455 (1974). While the preferable course is to award to the spouse, as a part of his or her assets upon distribution, any

354

award that arises from his or her personal injury or disability, it is not required that the court do so if the total distribution is fair, just and equitable. Under all the circumstances presented and considering the entire plan of distribution between the spouses, the needs of both spouses were met equitably, justly and fairly.

The judgment is affirmed.

FARRIS, C.J., and WILLIAMS, J., concur.

Reconsideration denied February 14, 1979.

Review denied by Supreme Court May 25, 1979.